JOHN TSCHUMI *et al.* v. F. G. HILLS *as Receiver.*
**No. 208.**

1. CORPORATION—*directors cannot change par value of shares.* Directors of a Kansas corporation have no authority to change the number or par value of the shares of its capital stock as set forth in its charter.

2. ———— *may, by vote and certificate, increase the capital stock.* The only provision in respect to any change in the capital stock of a corporation after it is organized, is found in paragraph 1171, General Statutes of 1889, which empowers the stockholders to vote an increase of the amount of its authorized capital, and said section requires a formal certificate of such increase to be made by the directors and to be filed and recorded in the same manner as the charter.

3. ———— *shares increased by vote of directors only, void.* Where the directors of a corporation, who had voted to increase the par value of its stock from one dollar each, as the charter provided, to five dollars each, thereafter and without any other authority than such vote, issued shares purporting to be of the par value of five dollars each, *held*, that such shares were void.

4. ———— *persons taking increased shares as evidence of loans merely, not liable.* Where persons, who had taken such invalid shares of stock and afterwards returned the same and received from the corporation the money they had paid for it, under a parol agreement made at the dates of the transactions that such shares were to be held as collateral security for such loans, were sued by the receiver of such corporation, after its insolvency, to recover the money so repaid, and it appeared that certain debts which were contracted by the corporation while such stock was outstanding remained unpaid, *held*, that such parties were not liable as stockholders of said corporation to the creditors represented by the receiver, and that it was error to render judgments against them in favor of the receiver for the amounts returned to them as aforesaid.

Error from Franklin District Court. Hon. A. W. Benson, Judge. Opinion filed December 22, 1897. *Reversed.*

*C. A. Smart*, for plaintiffs in error.

*John W. Deford*, for defendant in error.

Milton, J. F. G. Hills, the defendant in error, brought this action against the plaintiffs in error, in the District Court of Franklin County, to recover various sums which he alleged said parties had illegally drawn from the capital stock of the Wellsville Farmers' and Laborers' Exchange, an insolvent corporation, for which said Hills had been appointed receiver by said court. The answer of defendants set up that they had loaned money to the corporation and received shares of stock from it as evidence of the indebtedness thus created, and that defendants and the officers of the corporation had so intended and undersood in respect to these transactions. The answer also contained a general denial.

The trial court made extended findings of fact, the principal features of which are as follows :

" 1. The Exchange was incorporated on May 12, 1890, to conduct a general merchandise and exchange business at Wellsville, in Franklin County, its authorized capital stock being fifty thousand dollars, divided into fifty thousand shares of one dollar each. It opened a general merchandise business at Wellsville about the time of its incorporation and conducted such business until the twenty-ninth day of October, 1894, when, having become insolvent, a receiver for its property and effects was duly appointed.

" 2. On or before the twenty-eighth day of February, 1891, by a vote of the directors, the shares of capital stock were increased to five dollars each. And thereafter all stock subscribed for and issued was in

shares stated to be of that value. The charter, however, was not amended.

"3. The by-laws permitted stockholders to withdraw the money paid for their stock, upon surrender of the certificates, after the giving of the prescribed notice in writing of the intention to withdraw. The defendant, E. F. Turner, a single woman engaged in the millinery and dressmaking business at Wellsville, learned from her father that the corporation wanted to use her money and would pay her ten per cent. interest. She went to the secretary of the concern and was informed by him that the transaction would be safe, and that she could have ten per cent. interest and could draw her money out on thirty days' notice; and thereupon she gave him $110 and received a certificate of stock for twenty-two shares, signing a receipt therefor on the 'stub.' Both Miss Turner and the secretary regarded the transaction as a loan. On September 9, 1892, having given thirty days' notice, she withdrew $110 with ten per cent. interest. The secretary entered the transaction on the books of the corporation as stock regularly issued. During the time the corporation had Miss Turner's money, it contracted debts amounting to $2,700, and it issued sixty-six shares of stock to subscribers other than defendants below. The receiver has paid only forty per cent. of the indebtedness, from the proceeds of merchandise sold and from collections on notes and accounts. Miss Turner did not read the certificate although she could have done so. She took no part in any corporate meetings. When her stock was surrendered it was marked canceled, and she always considered the transaction as an investment of her money at interest.

"4. The facts regarding the issue of stock to Tschumi, Hey and Anderegg are substantially the same as those concerning Miss Turner. These three men are foreigners and can neither read nor write the English language, except to write their names. They can understand and intelligently take part in an ordinary conversation in English. All of them can read and write the German language, and the secretary of the

552　　　　　　　TSCHUMI v. HILLS.

S. Dept.　　　　　Opinion.　Milton, J.　　　　6 Kan. App.

·corporation was a German. They did not ask to have their certificates read to them. Tschumi and Hey were stockholders before the transactions in question occurred, and attended the corporation meetings and voted therein. They knew the certificates in question were of the same form and appearance as those they already held as certificates of stock. The corporation books showed that all of the stock issued to defendants was regularly issued and outstanding, the same as other stock, until the entry of cancellation of the various certificates. The secretary regarded the transactions as loans and the stock so issued as being collateral security. If the money so withdrawn by defendants and others similarly situated should be refunded and all the remaining assets collected, the amount would still be insufficient to pay the debts of the corporation.''

The court made certain conclusions of law, in which it held that the evidence of parol conditions contemporaneous with the subscriptions and inconsistent with the terms thereof was incompetent, and that, as between the defendants and those who gave credit to the corporation on the faith of these subscriptions, the loss ought to fall on the defendants. Judgment was rendered against each of the defendants as follows : Turner, $110 ; Tschumi, $400 ; Anderegg, $180 ; and Hey, $240.

The findings of the court show that the directors of the Exchange, in February, 1891, increased the par value of the shares of stock from one dollar each, as stated in the charter, to five dollars, and that the charter was not amended. This was done prior to the transactions through which plaintiffs in error were held by the trial court to have become liable to the creditors of the corporation. Counsel for plaintiffs in error argues that, if they are liable at all, such liability cannot exceed the par value

1. Directors, by vote only, cannot change par value of shares.

TSCHUMI v. HILLS. 553

Dec. 22, 1897.        Opinion.    Milton, J.        . E. Div.

of the shares of stock actually issued to each of them as such value is fixed in the charter.

Paragraph 1161 of the General Statutes of 1889 provides what must be set forth in the charter of a corporation, the sixth item being, "The amount of its capital stock, if any, and the number of its shares into which it is divided." Paragraph 1167, relating to the powers of the corporation, provides among other matters : "Every corporation shall have power, . . . *sixth*, to make by-laws not inconsistent with existing laws for the management of its property, the regulation of its affairs, and for the transfer of its stock."

Paragraph 1171 authorizes a corporation to increase its capital stock in one of two ways, "by a vote of the stockholders, in conformity with the by-laws thereof ;" and requires that a certificate of such increase shall be filed and recorded in the same manner as the charter. Paragraph 1176 is as follows :

2. Corporations, stock of, how increased.

"The directors or trustees may adopt by-laws for the government of the corporation ; but such by-laws may be altered, changed or amended by a vote of the stockholders, at an election to be ordered for that purpose, by the directors or trustees, on the written application of a majority of the stockholders or members."

It is evident that the last section authorizes the first directors of a newly chartered corporation to complete its organization by the adoption of by-laws ; and it is equally evident that, after such by-laws are once adopted by the directors, their powers in that regard are ended, and those of the stockholders become substituted therefor. . While specific authority to increase the capital stock of a corporation is granted by paragraph 1171 to the stockholders, there is no provision in the law which modifies the requirement of paragraph

554         Tschumi v. Hills.

S. Dept.        ·       Opinion.   Milton, J.       6 Kan. App.

1161, that the amount of capital stock and the number of shares into which it is divided shall be set forth in the charter. In respect to any particular corporation, this provision is binding upon its members, directors, and creditors. The presumption that creditors have dealt with the corporation on the faith that its subscribed capital is held by *bona fide* stockholders, and that such capital stock is a trust fund to which creditors may resort, can only be indulged in with respect to such capital stock as the charter of the corporation authorizes to be issued. If the stock be wholly different from that described in the charter, the rights of creditors cannot operate so to transform it that it will appear legal and valid when viewed by a court. Its invalidity is inherent. An essential element is wanting — that element which the law alone can impart.

As the plaintiffs in error *apparently* became stockholders, notwithstanding such was by no means their intention, as the trial court found, the law will hold their apparent *status* to be their actual *status*, in the interest of the creditors whose claims are concerned in this action. But as it appears that no *contract of subscription*, except that evidenced by the shares of stock, was made by any one of the plaintiffs in error, it follows that if the shares were void they were not subscribers. If not subscribers, then they are not liable to the creditors of the corporation. The argument may be thus stated: *First*, plaintiffs in error made no subscription except that which must be inferred from their ownership of shares of stock by direct issue from the corporation; *second*, but such stock is foreign to the terms of the charter and is void; therefore they are not stock-

3. Shares illegally increased, void.

holders, and are not liable as such to the creditors of the corporation.

From the record there can be no doubt that this matter was treated as an issue in the trial of the case, and no suggestion has been made to the contrary. If

**4. Holders of void shares not liable under the statute.** their stock was void, we find no good reason why the money paid therefor should not have been returned to plain-tiffs in error. It was returned, and there is no lia-bility on their part to restore the funds. It also follows that, if the stock is void and if plaintiffs in error. are not stockholders, they have a right to ask the court so to declare, since on this theory estoppel arises as in the case of a holder of valid stock.

We think these views are sustained in principle by the decisions of some of the courts of last resort. In the case of *Scoville v. Thayer* (105 U. S. 143), the court considered the effect of an overissue of the capital stock of a corporation. It appears that a Kansas cor-poration, which, by complying with the conditions of the statute, might have doubled its capital stock, as stated in its charter, actually quadrupled such amount. The question considered was whether the stock of the third and fourth issues, which were in excess of that allowed by law, was or was not void. The court held as follows :

"It is well settled that a corporation has no im-plied power to change the amount of its capital as prescribed in its charter and that all attempts to do so are void. *Mechanics' Bank v. New York & New Haven Railroad Co.*, 13 N. Y. 599 ; *New York & New Haven Railroad Co. v. Schuyler*, 34 id. 30 : *Railway Co. v. Allerton*, 18 Wall. 233 ; *Stace & Worth's Case*, Law Rep. 4 Ch. App. 682, note. In this case the at-tempt to increase the stock of the company beyond the limit fixed by its charter was *ultra vires*. The increased stock itself was, therefore, void. It con-

ferred on the holders no rights and subjected them to no liabilities. . . . We think it follows that if the holder of such spurious stock has none of the rights, he can be subjected to none of the liabilities of a holder of genuine stock. His contract to pay for spurious shares is without consideration and cannot be enforced.

"It is insisted, however, that the defendant having attended by proxy the meetings at which the increase of the stock of the company beyond the limit imposed by law was voted for, and having received the certificates for the stock thus voted for, and after such increase the company by its agents having held itself out as possessing a capital of $400,000, and invited and obtained credit on the faith of such representations, he is now estopped from denying the validity of the stock and his obligation to pay for it in full. We think the defendant is not estopped to set up the nullity of the unauthorized stock. It is true that it has been held by this court that a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create. But those were cases where the increase of the stock was authorized by law. . . . But here, the corporation being absolutely without power to increase its stock above a certain limit, the acquiesence of the shareholder can neither give it validity nor bind him or the corporation. 'A distinction must be made between shares which the company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which, they have been issued. The holders of shares which the company has no power to issue, in truth had nothing at all, and are not contributors.'"

And again :

"Persons dealing with the managers of a corporation must take notice of the limitations imposed upon their authority by the act of incorporation. *Zabriskie v. The Cleveland, Columbus & Cincinnati Railroad Co.*, 23 How. 381. The law secured to the public and to the creditors an infallible mode of ascertaining the

real capital of the company. They were bound to know that the law permitted no such increase of its capital stock as the company had attempted to make."

In the case of *Andrews et al. v. National Foundry & Pipe Works, Limited,* (76 Fed. Rep. 166), it appears that parties who held stock of a Wisconsin corporation as collateral security for a loan of money made by them to the corporation, were sought to be charged as stockholders. The statute of that State forbade the pledging of its capital stock by a corporation. The court said :

" If, under the Wisconsin statute, the stock in the hands of Andrews and Whitcomb was lawfully held as collateral, they are not liable as upon an unpaid subscription. . . . And, if not lawfully in their hands, the stock by the terms of the statute was void."

While the foregoing differ in some respects from the present case, we think the declarations of the law therein made are applicable here. This corporation had no lawful power to issue the shares of stock in question, and the holders of such shares had nothing by reason of possessing them.

Cook makes this emphatic declaration concerning a change in the number and par value of shares of capital stock in a corporation : "It is a principle of law closely related to those already set forth in this chapter, and well settled, that the number of shares into which the capital stock has been divided, and the par value of those shares, can neither be increased nor diminished, in number or in value, without express warrant of authority either from the Legislature or the charter of the company." Cook on Stock and Stockholders (2d ed.), § 290. See also cases cited in note.

And Beach says : " The shares of a corporation can

neither be increased nor diminished in number or in their nominal value, unless this be expressly authorized by the company's charter or by act of the Legislature.'' Beach on Private Corporations, § 468, and notes.

We have reached the conclusion that the plaintiffs in error were never stockholders of the Exchange, within the terms and provisions of the charter thereof ; ·that the stock issued to them was invalid, and in consequence the judgment against them as stockholders was erroneous. No other questions require consideration by us.

The judgment of the District Court is reversed, and the case remanded with instruction to enter judgment in favor of plaintiffs in error for costs.